IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-30794
_____


NATIONAL HEALTHCARE INVESTMENTS, INC.,
CARE SERVICES INSTITUTE OF AMERICA, INC.,
doing business as Plantation Nursing Home,


                                    Plaintiffs-Appellants,


        versus


STATE OF LOUISIANA, through its
Department of Health and Hospitals;
DAVID HOOD, in his official capacity
as Secretary of the Louisiana State
Department of Health and Hospitals,


                                    Defendants-Appellees.



_____

Appeal from the United States District Court
for the Eastern District of Louisiana
99-CV-3923-D
_____
April 4, 2002


Before KING, Chief Judge, GARWOOD and HIGGINBOTHAM, Circuit Judges.

PER CURIAM[*]:

        Plaintiff-Appellants National Healthcare Investments, Inc. and

_____

        [*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Care Services Institute of America appeal the district court's judgment against them. Plaintiffs argue that the district court committed clear error in finding that Care Services did not give the Louisiana Department of Health and Hospitals (DHH),[1] proof that it incurred an obligation to make a capital expenditure within one year of receiving a certificate of need (CON) in November 1983. This action was filed in December 1999.

In reviewing the evidence, the district court relied on the "presumption of regularity" that supports official acts of public officers.  In the absence of clear evidence to the contrary, this doctrine presumes that public officers have properly discharged their official duties. *See Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001).  The doctrine thus allows courts to presume that what appears regular is regular, the burden shifting to the attacker to show the contrary. *See id*.  Thus the fact that the DHH deemed the CON expired creates a presumption that Care Services did not timely supply the DHH with the requisite documentary evidence that it had incurred an obligation.

Plaintiffs contend that, despite this presumption, the record demonstrates that Care Services did incur such an obligation and timely furnished DHH documentary evidence thereof.  Specifically, they claim that the fulfillment of the requirement is evidence by:

---

[1]At the time the CON was issued, the Department was known as the Louisiana Department of Health and Human Resources.

1) a purchase agreement allegedly executed by former Care Services's president Stephen Culotta to buy a facility where the nursing home was to be located; 2) a construction contract allegedly submitted with Care Services' application for a CON; 3) a commitment to finance the nursing home from Alliance Federal Company; and 4) an inducement resolution adopted by the Louisiana Public Facilities Authority for the issuance of bonds to fund the nursing home project.

Care Services relies on Culotta's December 2000 affidavit to prove the existence and timely transmittal to DHH of the purchase agreement and construction contract.[2] The district court plainly considered this affidavit, but in this bench tried case was not obligated to (and plainly did not) credit it to the extent of finding that it constituted clear evidence, considering the record as a whole, that Care Services submitted the appropriate documentation to DHH within one year of receiving its CON.

Care Services also points to the Staff Comments prepared by the DHH, which stated that evidence of "ownership or option to acquire" the site where the facility was to be located was "included in the application." By itself, this comment does not indicate that Care Services had "incurred an obligation" for "the

---

[2]Neither the original nor a copy of any of the documents mentioned in the affidavit and relied on by Care Services, nor original or copy of any document transmitting any of them to DHH, is attached to the affidavit or otherwise in the record.

The affidavit also states that "actual construction of the facility was delayed for a number of years" after 1983.

3

. . . acquisition . . . of a capital asset," *see* 42 C.F.R. § 100.103(c)(1983), because Care Services might have only possessed an option to acquire the site. The owner of an option to buy a site, of course, does not incur an enforceable obligation to buy it. In the face of the DHH's decision to terminate the CON, and a July 1985 letter from the DHH to Care Services's former attorney indicating that the CON had been terminated for failure to submit the required evidence of obligation to make capital expenditure and that DHH had never received a construction contract, it was not clear error for the district court to conclude that Care Services did not submit to DHH a construction contract proving an obligation to acquire the site. Nor do the Staff Comments respecting blueprints suggest that any contract of any kind was ever submitted.

Care Services also points to a statement in the Staff Comments that the project was to be "100% financed by the Alliance Federal Company," and that "[t]his information was documented in the application." But this comment does not necessarily indicate that Care Services submitted evidence of a "documented binding commitment . . . accompanied by an acceptance signature of the proponent." *See* LA. REG. vol. 9, no. 7 (1983). Similarly, the record contains a letter from the Louisiana Public Facilities Authority announcing that an inducement resolution had been adopted for the issuance of bonds to support the proposed nursing home. To

4

satisfy the requirement of incurring an obligation under the regulations, however, Care Service would have to show that the bonds had "received final approval for sale or issuance." *See id*. Although it is not clear from the record what the adoption of an "inducement resolution" entails, the minutes of the Louisiana Public Facilities Authority indicate that the bond issuance had received only "preliminary approval." In any case, plaintiffs bear the burden of demonstrating that the bonds had received final approval, and have not done so.

Accordingly, plaintiffs have not demonstrated that they timely showed the DHH that Care Services incurred an obligation to make a capital expenditure.

AFFIRMED.

5